**Anton LORENZ, Plaintiff,**

v.

**BERKLINE CORPORATION, Defendant.**

**No. 60 C 943.**

United States District Court
N. D. Illinois, E. D.

Feb. 18, 1963.

Silverman, Mullin, Cass, Chicago, Ill., for plaintiff.

Max R. Kraus, Chicago, Ill., for defendant.

CAMPBELL, Chief Judge.

This is an action for infringement of three patents brought by Anton Lorenz, an individual residing in Boynton Beach, Florida, against the Berkline Corporation, which was incorporated in the State of Tennessee and which has a showroom and sales office in Chicago, Illinois. Generally, the three patents relate to fixture or metal linkages embodied in reclining chairs. The defendant is engaged in the manufacture and sale of upholstered furniture, including reclining chairs. The plaintiff's complaint alleges that he is the owner of the three patents in suit; the Lorenz Patent, No. 2,918,113; the Fletcher Patent, No. 2,940,509; and the Schliephacke Patent, No. 2,940,510. The complaint further alleges that three chairs manufactured by defendant infringe the plaintiff's patents. More specifically, it is alleged that defendant's 87 T.V. chair infringes all three of the patents in suit; that defendant's Du-All chair infringes the Lorenz and Fletcher Patents; and that defendants Berkline 400 chair infringes the Lorenz and Fletcher Patents.

Defendant denies the validity of the patents and also that it has infringed them. Defendant has also filed a counterclaim seeking a declaratory judgment that the patents in suit are invalid and are not infringed by the defendant.

The Court having duly considered the pleadings, the evidence and briefs of counsel makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. Plaintiff is the lawful owner of the patents in suit, to wit: the Lorenz Patent, No. 2,918,113, the Fletcher Patent, No. 2,940,509, and the Schliephacke Patent, No. 2,940,510. The Lorenz Patent was issued to the plaintiff on December 22, 1959. The Fletcher Patent was issued to the plaintiff on June 14, 1960. The Schliephacke Patent was issued to the plaintiff on June 14, 1960.

DEFENDANT'S CHAIRS DO NOT INFRINGE PLAINTIFF'S PATENTS

2. Defendant's 87 T V chair does not utilize any of the embodiments of the Lorenz Patent. Figs. 3, 4 and 5 of the Lorenz Patent has a seat and back-rest unit pivoted on a fixed single center, whereas the 87 T V chair pivots on two separate centers. The Figs. 3–5 embodiment of the Lorenz patent does not have a slotted guide member which is fixedly secured to a leg-rest link to move therewith, as does the 87 T V chair. The linkage arrangement in Figs. 3–5 embodiment of the Lorenz patent is different and functions differently from the 87 T V chair. The five embodiments of the Lorenz patent discloses that none of the Lorenz embodiments has a movable front guide link, or any guide link, which is slotted to cooperate with a pin. The Figs. 1 and 2 embodiment of the Lorenz patent has a stationary support with a slot 36 to receive a pin 34. The slotted support is not movable as is the member D of the 87 T V chair. The Lorenz patent has the leg-rest connected directly to the front of the seat, whereas in the 87 T V chair the leg-rest is connected and supported by a leg-rest linkage. The seat and back-rest unit in the Lorenz patent

(Figs. 1–2) pivots on a fixed single center, while the 87 T V chair pivots on two separate centers. The Figs. 6–8 embodiment of the Lorenz patent provides a seat and back-rest unit which also pivots on a single center. This Lorenz embodiment has no slotted guide link cooperating with a pin as does the 87 T V chair. The Figs. 9–10 embodiment of the Lorenz patent has no guide member which is slotted to cooperate with a pin, and it has no slotted member connected to the leg-rest linkage, as does the 87 T V chair. The Figs. 12–14 embodiment of the Lorenz patent has no guide member which is slotted to cooperate with a pin, and it does not have a slotted member connected to the leg-rest linkage as in the 87 T V chair. The 87 T V chair does not utilize the elements, or the combination of elements, and their functions, or their equivalents, as disclosed in the five embodiments and claimed in the Lorenz Patent.

3. The 87 T V chair does not utilize any of the embodiments of the Fletcher Patent. Each of the four embodiments of the Fletcher patent in suit discloses that none of the embodiments has a movable front guide link, or any guide link, which is slotted to cooperate with a pin. The Fig. 1 embodiment of the Fletcher patent has a member 22 which serves to connect the seat to the support, but this member does not have a slot or cooperating pin and it is not connected to a leg-rest linkage. The Fig. 3 embodiment of the Fletcher patent has a front member 122 and a rear member 123 which connects the seat to the support, however, neither of these members has any slots cooperating with any pins. The Fig. 5 embodiment of the Fletcher patent has a member 222 which serves to connect the seat to the support, but this member does not have a slot or cooperating pin and it is not connected to a leg-rest linkage. The Fig. 7 embodiment of the Fletcher patent has members fixed to the seat, which carry pins 333 and 335 which slide in slots 337–339 on the support. This embodiment does not have a slotted guide member D secured

to a link which pivots with the movement of the leg-rest linkage, as in the 87 T V chair. The 87 T V chair does not utilize the elements, or the combination of elements and their functions, or their equivalents, as disclosed in the Fletcher embodiments and as claimed in the Fletcher Patent.

4. The 87 T V chair does not utilize the embodiment of the Schliephacke Patent. The front guide link D of the 87 T V fixture is fixedly secured to the link K, which is part of the leg-rest linkage. As the seat and back-rest unit is tilted, the front guide link pivots and operates the link K and leg-rest linkage. Although the Schliephacke patent embodiment has a front guide link 20, it is not connected in any way to the leg-rest linkage but is independent thereof. In the Schliephacke patent, the leg-rest is pivotally connected to the front of the seat by link 52 and a single link 56 operates the leg-rest. The leg-rest of the 87 T V is not connected to the seat, as in Schliephacke, but is connected to and supported by a plurality of links which operate the leg-rest. The arrangement and operation of the 87 T V bear no resemblance to the Schliephacke patent. The 87 T V chair does not utilize the elements, or the combination of elements and their functions, or their equivalents, as disclosed in the Schliephacke embodiment and as claimed in the Schliephacke Patent.

5. Each of the five embodiments of the Lorenz patent discloses that none of the Lorenz embodiments has a movable slotted member cooperating with a pin for permitting the seat and back-rest unit to move from intermediate to fully reclining position. The Figs. 1 and 2 embodiment of the Lorenz patent has a stationary support with a slot 36 to receive a pin 34. The slotted support is not movable as is the slotted member of the Du-All chair. The Lorenz patent has the leg-rest connected directly to the front of the seat, whereas in the Du-All chair the leg rest is connected and supported by a leg-rest linkage. The seat and back-rest unit in the Lorenz patent (Figs.

1–2) pivots on a fixed single center, while the Du-All chair pivots on two separate centers. The Figs. 6–8 embodiment of the Lorenz patent provides a seat and back-rest unit which also pivots on a single center. This Lorenz embodiment has no slotted member cooperating with a pin, as does the Du-All chair. The Figs. 9–10 embodiment of the Lorenz patent has no slotted member which cooperates with a pin. It has no slotted member connected to the leg-rest linkage as in the Du-All chair. The Figs. 12–14 embodiment of the Lorenz patent likewise has no movable slotted member which cooperates with a pin. It has no member connected to the leg-rest linkage as in the Du-All chair. The Du-All chair does not utilize the elements, or the combination of elements and their functions, or equivalents, as disclosed in the five embodiments and claimed in the Lorenz Patent.

6. Each of the four embodiments of the Fletcher patent in suit discloses that none of the Fletcher embodiments has a movable slotted member cooperating with a pin for permitting the seat and back-rest unit to move from intermediate to fully reclining position. The Fig. 1 embodiment of the Fletcher patent has a member 22 which serves to connect the seat to the support, but this member does not have a slot or cooperating pin and it is not connected to a leg-rest linkage. The Fig. 3 embodiment of the Fletcher patent has a front member 122 and a rear member 123 which connects the seat to the support. Neither of these members has any slots cooperating with any pins. The Fig. 5 embodiment of the Fletcher patent has a member 222 which serves to connect the seat to the support, but this member does not have a slot or cooperating pin and it is not connected to a leg-rest linkage. The Fig. 7 embodiment of the Fletcher patent has members fixed to the seat, which carry pins 333 and 335 which slide in slots 337–339 on the support. This embodiment does not have a slotted member secured to a link which pivots with the movement of the leg-rest linkage as in the

Du-All chair. The Du-All chair does not utilize the elements, or the combination of elements and their functions, or their equivalents, as disclosed in the Fletcher embodiments and as claimed in the Fletcher Patent.

7. Defendant's Du-All chair has a selective leg-rest control whereby the occupant may, by applying foot pressure against the leg-rest, maintain the leg-rest retracted or inoperative as the seat and back-rest unit moves from upright to intermediate and to fully reclining positions. The occupant may also permit the leg-rest to elevate as the seat and back-rest unit is moving to the various positions by not applying leg-rest pressure. There is no structure shown for performing a similar function or operation in either the Lorenz or Fletcher patents charged to be infringed. It was demonstrated on Plaintiff's licensed chair that if pressure was applied to the leg-rest to restrain its movement (as in the Du-All chair), that Plaintiff's licensed chair would not operate to pivot or tilt to its various positions. The linkage and operation of the Du-All chair bear no resemblance to any of the embodiments and functions shown in the Lorenz and Fletcher patents in suit.

8. The Fig. 3 embodiment of the Lorenz patent discloses a seat and back-rest unit which pivots about a single center. The 400 chair pivots about two centers. The linkage of the 400 chair is not similar to nor does it operate like any of the embodiments of the Lorenz patent. It does not utilize the elements or combination of elements and their functions, or equivalents, as disclosed in the five embodiments and claimed in the Lorenz Patent.

9. The leg-rest linkage in the 400 chair is connected to the seat and to the front guide link. The front guide link has a recess for engaging a pin. In the Fletcher embodiment, the front guide link is connected to the seat and to a support bar 126. The leg-rest linkage in Fletcher is connected to the support bar and is not connected to the front guide link as in the 400 chair. The 400 chair

does not utilize the elements or the combination of elements and their functions, or equivalents, as disclosed in the four embodiments and claimed in the Fletcher Patent.

10. The fixtures and metal linkages used by the defendant in its 87 T V chair, Du-All chair and Berkline 400 chair have different link arrangements and operate in a different manner than those claimed in the three patents in suit.

11. Defendant's 87 T V chair, Du-All chair or Berkline 400 chair do not infringe on plaintiff's Lorenz, Fletcher or Schliephacke patents.

THE LORENZ PATENT IN SUIT

12. Lorenz Patent in suit was filed by Plaintiff on June 11, 1958 and issued December 22, 1959, and shows five embodiments as follows:

Figures 1 and 2;
Figures 3, 4 and 5;
Figures 6, 7 and 8;
Figures 9, 10 and 11;
Figures 12, 13 and 14.

13. Figs. 1 and 2 of the Lorenz Patent were contained in an earlier United States application filed by Lorenz on September 12, 1952 and were removed from the earlier application and transferred to the application resulting in the patent in suit.

14. The earlier filed application issued as Patent No. 2,746,521. A comparison between Fig. 1 of Patent No. 2,746,521 and Fig. 1 of Lorenz patent in suit shows as the only structural difference, the provision of a slot in the Lorenz patent in suit to afford a lost motion action and a stop for arresting movement of the body supporting unit.

15. As to the embodiment shown in Figs. 1 and 2 of the Lorenz Patent, in suit, Plaintiff is relying on the filing date of the original filed application of September 12, 1952.

16. As to the embodiments shown in the remaining figures of Lorenz patent in suit, Plaintiff stated that he was relying on March 18, 1958 as the earliest date of invention.

17. Prior to the filing of the original application in 1952, and prior to the issuance of the Lorenz patent in suit, on December 22, 1959, Plaintiff had not made a full size reclining chair of any of the embodiments shown in the Lorenz patent in suit, except that Plaintiff made a chair like Figs. 3–5 with slightly different dimensions.

18. Plaintiff had never exhibited to the United States Patent Office Examiner any physical models of any of the embodiments of the Lorenz patent in suit, during the prosecution of the application which resulted in the patent.

19. Lorenz patent in suit has not been licensed or manufactured under any license from Plaintiff.

20. No reclining chair constructed in accordance with any of the embodiments of the Lorenz patent in suit has ever been manufactured and sold commercially.

21. The Lorenz Patent is not entitled to a filing date of September 12, 1952, but must rely upon the filing date of June 11, 1958 as the filing date of the application resulting in the Lorenz patent in suit.

22. A full size chair built in accordance with Figs. 1 & 2 of the Lorenz Patent can not be pivoted to tilt rearwardly by an occupant sitting in the chair. When the occupant of such a chair starts to lean back, the leg-rest does not move up to support the legs in accordance with the patent.

23. The multiple-position reclining chair shown in Figs. 1 and 2 of the Lorenz patent in suit is inoperative and lacks utility.

24. The four multiple-position reclining chairs shown in Figs. 3 to 14 inclusive, of Lorenz patent in suit, are inoperative and lack utility.

25. The description in the specification of the Lorenz patent in suit with respect to each embodiment is contradictory as to whether the leg-rest elevates as the seat and back-rest is pivoted from upright to intermediate tilted position. The specifications state that the leg-rest

linkage of each embodiment is blocked and therefore cannot move to elevate the leg-rest as the seat and back-rest moves from upright to intermediate tilted position, and therefore are inconsistent with the claims of the Lorenz patent.

26. The Lorenz Patent specification is contradictory as to operation of the leg-rest and contradicts the claims.

27. The Lorenz structure does not have the balance necessary to produce a good chair, and no chair such as that shown in the Lorenz drawings has been commercially produced.

### THE FLETCHER PATENT IN SUIT

28. The Fletcher Patent, in each of its four embodiments, illustrates a reclining chair in which the body supporting unit, which includes the seat and back-rest rigid with each other, is intended to rotate about two separate axes or two separate instantaneous centers of rotation. It moves from upright to intermediate tilted sitting position about one instantaneous center of rotation and from intermediate to fully reclining position about another instantaneous center of rotation. The leg-rest in each instance is intended to move up rapidly upon the initial movement of the body supporting unit.

29. In the embodiment shown in Figs. 1 and 2 of the Fletcher Patent, the first phase of movement from upright to intermediate position is as described in the patent, in that the seat rotates about the pivot 24 and is blocked by stop 32. The leg-rest is caused to move upwardly. The application of additional pressure against the back-rest to recline further results in somewhat further elevation of the leg-rest linkage, and by reason of the stop 68 acting against the link 48, the leg-rest linkage becomes blocked, causing the front end of the seat to rise in a position not described in the patent. Only if the seat and back-rest unit is elevated to a point where the leg-rest linkage is released can the seat and back-rest unit move rearwardly to further reclining position. In such movement the depending portion 22 of the seat becomes disengaged from the stop 32 and remains disengaged until the seat and back-rest unit moves to its fully reclining position. The second phase of movement is not in accordance with the description of the patent.

30. In the embodiment shown in Figs. 3 and 4 of the Fletcher Patent, if an occupant sitting in the chair carelessly leaned back and did not push at the right position on the back-rest, the seat and back-rest unit would rotate about pivot 129 without the leg-rest extending. To manipulate the chair to extend the leg-rest, an occupant would be required to use the arms of the chair. An occupant not taught to operate the chair properly could be catapulted rearwardly.

31. In the embodiment shown in Figs. 5 and 6 of the Fletcher Patent, if an occupant who was in fully reclining position in the chair attempted to return to upright sitting position, applied his weight to the forward end of the seat, the leg-rest would be extended higher than the top level of the seat. If the occupant continued to lean forwardly, the seat would drop to rest on member 288 and the leg-rest linkage would be more or less locked. Then if the occupant applied pressure on the leg-rest, it would swing downwardly to hit the floor. The leg-rest could not return to the proper position it should assume in the normal upright position of the chair. The chair is not foolproof in its operation. It does not operate as stated in the patent.

32. The embodiment shown in Figs. 7 and 8 of the Fletcher Patent, the seat and back-rest unit is supported on pins which ride in slots. With the weight of a person supported by the pins, the pins would grind away the slots in moving in the slots. Engineering wise, it is not a good construction.

33. The Lorenz patent was filed on June 11, 1958, prior to the filing of the Fletcher Patent on July 10, 1958. As between the Lorenz earlier filing date to the Fletcher filing date, the Lorenz earlier date is prima facie evidence that Lorenz is prior inventor to Fletcher.

34. Fletcher testified that he was not the first to move a chair about two separate centers of rotation; that there were others before him that made chairs that moved about two separate centers of rotation.

35. Each element and each function defined in Claims 1, 10 and 11 of the Fletcher Patent is found in the chair disclosed in Figs. 9, 10 and 11 of the Lorenz Patent.

36. Each element and each function defined in Claims 1, 5, 10, 11, 14 and 16 of the Fletcher Patent is found in the chair disclosed in Figs. 12, 13, 14 of the Lorenz Patent. Each element and each function, or its equivalent, defined in Claim 2 of the Fletcher Patent is found in the chair of Figs. 12, 13 and 14 of the Lorenz Patent.

37. The Lorenz Patent in Figs. 9, 10 and 11 and/or Figs. 12, 13 and 14, and the description of these figures, disclose the construction, element for element, and function for function, or its equivalent, of the construction and function defined and claimed in each of Claims 1, 2, 5, 10, 11, 14 and 16 of the Fletcher Patent.

38. The Fletcher Patent has never been licensed or manufactured by Plaintiff.

39. There is no evidence that any commercial success of T V reclining chairs is attributable to the invention of the Fletcher Patent.

## THE SCHLIEPHACKE PATENT IN SUIT

40. The Schliephacke Patent relates to a multiple-position reclining chair and shows a single embodiment in which the body supporting unit, which includes the seat and back-rest rigid with each other is intended to rotate about two separate axes or two separate instantaneous centers of rotation. The body supporting unit moves from upright sitting position to intermediate tilted sitting position about one instantaneous center of rotation where its movement is blocked, and from intermediate to fully reclining position about another instantaneous center of rotation. The leg-rest elevates as the seat and back-rest moves from its upright position.

41. The Schliephacke Patent provides a pair of links attached to each side for pivotally supporting the seat and back-rest on the support. The front link has a slot to provide for a lost motion action.

42. Defendant's expert Fazekas produced a template, made in accordance with the embodiment shown in the Schliephacke Patent. He demonstrated that if the occupant leaned back, perhaps carelessly, a peculiar movement took place, not described in the patent. The seat and back-rest would elevate with the rearward pivoting of the links 20 and 22 and with the weight of the occupant against the back-rest, the front link 20, by virtue of its slot 36, would move up in a lost motion action, and the seat and back-rest would tilt rearwardly without the leg-rest extending to support the occupant's legs. Fazekas testified that the construction of the chair was such that an occupant could turn over with the chair in moving to fully reclining position, unless the chair was extra heavy. The chair has two possible modes of operation, one of which is not described in the patent. The mode of operation not described will not permit the chair to work properly. It is not a foolproof chair.

43. Plaintiff's witness Fletcher testified that the Schliephacke Patent does everything Fletcher Patent does but is a more simple arrangement.

44. The multiple-position reclining chairs shown in the Fletcher Patent and the Schliephacke Patent are basically the equivalent of each other, since they both perform the same function and operation by equivalent means.

45. As between Fletcher and Schliephacke, Plaintiff filed the Fletcher application on July 10, 1958, and the Schliephacke application on October 28, 1958, therefore, Fletcher is prior to Schliephacke and is prior art against Schliephacke. Plaintiff did not attempt to carry back the Schliephacke filing date prior to the Fletcher filing date.

46. Plaintiff's prior issued Schliephacke Patent filed January 3, 1956 and issued June 16, 1959, shows a reclining chair having a seat and back-rest rigid with each other, supported on a pair of links attached to each side. The difference between this prior art patent and the Schliephacke patent in suit is the provision of a slot in the front link of the patent in suit to provide for a lost motion action. With the slot, the chair will operate as does the chair in Schliephacke Patent. It will provide a T V position and a fully reclining position. This was demonstrated on template D. Ex. 26.

47. Plaintiff's Australian Patent No. 213,084, the invention of Luckhardt, published August 2, 1956 shows a reclining chair having a seat and back-rest rigid with each other, supported on a pair of links attached at each side. The difference between this prior art patent and the Schliephacke Patent, in suit, is the slot in the front link of the patent in suit to provide for a lost motion action. With the slot the chair will operate as does the Schliephacke chair.

48. It is common practice to produce a lost motion in a mechanical linkage and it is common to put a slot in a link for that purpose.

49. Schliephacke Patent has not been licensed or manufactured by Plaintiff.

## PLAINTIFF'S PATENTS IN SUIT ARE INVALID FOR LACK OF NOVELTY AND INVENTION OVER THE PRIOR ART

50. The General prior art patents, Hammitt Patent No. 9449 issued in 1852, Norcross Patent No. 654,352 issued July 24, 1900, Doyle Patent No. 1,688,576 issued October 23, 1928, as well as Plaintiff's own patents, which are prior art in relation to the patents in suit, show reclining chairs consisting of a support and a body-supporting unit including a seat and back-rest and a movable leg-rest connected to the support by means of links or equivalent pivotal means, and in which an occupant may move from an upright position to any intermediate tilted sitting position, and to a further reclining position. The occupant may stop at any desired intermediate tilted sitting position. As the seat and back-rest move into a tilted position, the leg-rest automatically elevates to support the legs of the occupant.

51. A representative chair of the single movement lounger type is exemplified by P. Ex. 7. The rester type is exemplified by P. Ex. 8. These chairs were on the market prior to the alleged inventions of the three patents in suit. Plaintiff introduced as P. Ex. 9, a multiple-position chair manufactured by one of Plaintiff's licensees. This chair was not licensed under any of the three patents in suit.

52. A side by side comparison, between the multiple-position chair, the single movement lounger, and the single movement rester, that the body supporting unit, namely, the seat and back-rest, in the single movement chairs, could be moved to the same tilted positions as the seat and back-rest in the multiple position or T V chair, and that the occupant in the old single movement chair would be comfortably positioned to observe television or read. The difference between the two types of chairs is the position of the leg-rest. The leg-rest in the T V chair is raised to a higher elevation at the intermediate position than is the leg-rest of the single movement chairs for a corresponding position; all chairs are movable to further reclining positions and in such positions the leg-rest of each is fully extended to substantially the same degree. In the multiple position or T V chair, the leg-rest in moving from sitting to intermediate position is more rapidly accelerated.

53. In 1939, Plaintiff obtained Patent No. 2,173,283, now expired, covering a multiple position chair which had a built-in blocking means to stop or block the movement of the seat and back-rest at an intermediate tilted sitting position. Thereafter the occupant could move to a further reclining position. In the intermediate tilted stopped position, the leg-rest was elevated almost to a horizon-

tal plane in line with the seat. As the seat and back-rest were tilted further rearwardly from the intermediate to the fully reclining positions, the position of the leg-rest did not change appreciably relative to the seat.

54. In 1942, Plaintiff obtained Patent No. 2,276,053, now expired, which referred to Patent No. 2,173,283 and which showed an adjustable reclining chair comprising a body supporting unit including a seat and back-rest rigid with each other and pivotally supported on a frame, with a leg-rest at the front thereof. As the occupant tilted slightly rearwardly from the normal upright sitting position, the leg-rest accelerated or moved up rapidly, almost in a horizontal line with the seat, to support the legs of the occupant at a substantially horizontal level. The body and head and legs of the occupant were supported in this chair in the same position that they would be supported in the intermediate tilted position of the multiple position or T V chair. Plaintiff testified that the chair in the 1942 expired patent positioned the occupant in an excellent T V viewing position, and that it was the same television viewing position as of the chairs in the patents in suit.

55. Plaintiff subsequently obtained other patents, prior to the patents in suit, covering chairs accomplishing the same purpose as the chair of Patent No. 2,276,053. These patents are:

| PAT. NO. | FILED | ISSUED |
| --- | --- | --- |
| 2,726,709 | 1–21–53 | 12–13–55 |
| 2,743,764 | 10–22–53 | 5–1–56 |
| 2,743,765 | 1–21–53 | 5–1–56 |
| 2,760,554 | 1–11–54 | 8–28–56 |

Each of the chairs shown in these patents permits a person to move from an upright sitting position to a television viewing position, with the leg-rest extended fully outwardly in a substantially horizontal position.

56. In 1949, Plaintiff filed an application for patent which issued as Patent No. 2,615,497 on October 28, 1952, and which shows a reclining chair having manual locking means. The patent states as one of its objects,:

"An object of the present invention is to provide a reclining article of furniture wherein the seat and back-rest may be brought from a sitting position through a somewhat reclined or tilted position into an extreme reclined position and wherein, during the movement of the seat and back-rest into said tilted position, the leg-rest may be propelled from its sitting position into a position at a great angle relative to the seat in which relative position the leg-rest substantially remains during a movement of the seat and back-rest from the tilted position into the extreme reclined position."

The patent further states:

"Said tilted position of the seat 32, back-rest 34 and leg-rest 36 is very convenient for watching television programs for example."

57. Reclining chairs for positioning the occupant in television viewing position, with the leg-rest extending substantially horizontally in line with the seat to support the legs comfortably are old and were invented before the alleged inventions of any of the three patents in suit.

58. Curtis Patent No. 2,798,534 was filed July 14, 1953 and issued July 9, 1957, more than one year prior to the filing of the application for the Fletcher Patent on July 10, 1958.

59. The Curtis Patent discloses a multiple-position reclining chair having a body supporting unit which includes a seat and back-rest rigid with each other, which pivots about two instantaneous centers of rotation with a definite intermediate stop position for the body supporting unit, and a leg-rest for supporting the legs.

60. The Curtis Patent shows five different embodiments for accomplishing the same purpose. These embodiments comprise a support, a body supporting unit including a seat and back-rest rigid with each other which is pivotally sup-

ported on the support to move from an upright to an intermediate tilted sitting position, on one axis or one instantaneous center of rotation, and to move from the intermediate tilted sitting position to a fully reclining position about another axis or second instantaneous center of rotation. As the seat and back-rest unit reaches the intermediate tilted sitting position, it is stopped or blocked before it moves to the second axis or second center of rotation. In the movement of the seat and back-rest unit from upright to intermediate tilted sitting position, the leg-rest elevates to support the legs of the occupant.

61. The embodiments of the chairs shown in the Curtis patent perform the same functions and the same operations, by the same or equivalent means as the chairs disclosed in the Fletcher Patent.

62. The embodiment shown in Fig. 11 of Curtis Patent No. 2,798,534 includes a slot and pin coupling.

63. The Fletcher Patent, in Figs. 7 and 8, shows mounting means for the body supporting unit, consisting of pin and slot couplings, and the Fletcher patent equates links with pin-and-slot couplings as mounting means, and equates a stop on the link with the end of a slot as equivalent blocking means.

64. Curtis, patentee of Patent No. 2,798,534, built a full size embodiment of the reclining chair like that shown in Figs. 12 to 14 of his patent. He had it in daily use from the time it was built, in the last part of 1952 or early 1953 to 1958, when Curtis moved and retired to Florida, at which time it was dismantled and stored away. The chair was used by Curtis, his wife, and his children. His grandchildren played in the chair and climbed over it without damaging it. His friends saw it and recommended that he file for a patent. The chair was introduced in evidence and demonstrated with Curtis sitting in the chair and moving from upright to an intermediate tilted stopped position, and from the stopped position to a further reclining position. The movement was about two separate centers of rotation.

The leg-rest elevated as the seat and back-rest reclined.

65. The Curtis Patent states that an object of the invention is to provide a reclining chair which has novel pivot means whereby the chair turns or rocks on two successive axes, which are referred to as primary and secondary axes. The chair turns on the first or primary axis at the beginning of the rearward swinging movement and then shifts to the secondary axis at the completion of its swinging movement. The secondary axis is positioned rearwardly of the primary axis.

66. The Curtis claims also set forth the structure and operation as follows:

"said primary disks serve to pivotally support said frame during movement from an upright to a semi-reclining position and said secondary disks to support said frame during movement from a semi to a full reclining position."

67. The semi-reclining position of the Curtis Patent chair corresponds approximately and is the equivalent of the intermediate tilted sitting position in the Fletcher Patent.

68. Each element and each function defined in Claims 1, 10, 11, 14 and 16 of the Fletcher Patent is found in the disclosure of Figs. 7, 8, and 9 of the Curtis Patent. Each element and each function, or its equivalent, defined in Claims 2 and 5 of the Fletcher Patent is found in the disclosure of Figs. 7, 8 and 9 of the Curtis Patent.

69. Each element and each function, or its equivalent, defined in Claims 1, 2, 5, 10, 11, 14 and 16 of the Fletcher Patent is found in the disclosure of Figs. 12, 13, and 14 and/or Figs. 2, 3 and 4 of the Curtis Patent.

70. Curtis Patent was not cited by the Patent Office Examiner during the prosecution of the application for the Fletcher Patent.

71. There is a kinematic equivalent of Figs. 2 and 3 of the Curtis Patent to Figs. 1 and 2 of the Fletcher Patent. The Curtis chair shown in Fig. 2 operates about two separate pivots. When both

pivots are in contact with their respective sockets (corresponding to semi-reclining position), there is a built-in stop for the body supporting unit. The center of the first pivot corresponds to "a" on the pivot 36, and the center of the second pivot corresponds to "b" on the pivot 41. The distance between the centers "a" and "b" remains constant during the operation of the chair, hence, by what is known as kinematic equivalents, a link may be connected to the centers "a" and "b" and a stop placed on the link will permit the parts to operate in the same manner. This demonstrated the kinematic equivalents between the Curtis Patent, Figs. 2 and 3 and the Fletcher Patent Figs. 1 and 2.

72. The prior art Curtis Patent performs the same function and operation as does the Schliephacke patent by equivalent means.

73. The Lorenz patent was filed in the United States Patent Office on June 11, 1958, prior to the filing date of the Schliephacke patent which was October 28, 1958.

74. Figs. 9 to 14 inclusive, of the Lorenz patent, show two embodiments of a multiple-position reclining chair in which the body supporting unit, which includes the seat and back-rest unit is intended to pivot or rotate about two separate axes or two separate instantaneous centers of rotation. It moves from upright sitting to intermediate sitting position about one instantaneous center of rotation, and from intermediate to fully reclining position about another instantaneous center of rotation.

75. The Lorenz patent performs the same function and operation as the Schliephacke patent with the same or equivalent means, and is prior art to the Schliephacke patent.

76. The Fletcher Patent and the Schliephacke Patent are the equivalent of each other. The Schliephacke patent accomplishes everything the Fletcher patent accomplishes with the use of two simple links on each side and a slot in the front links. Providing a slot in the

front links for a lost motion action of either the prior art patents to Schliephacke Patent also, or the Australian Patent also converts each of the chairs of these patents to a multiple-position or T V chair like those shown in the Fletcher Patent and/or the Schliephacke Patent. It was a common practice well-known in the art long before the inventions of the patents in suit to produce a lost motion in a mechanical linkage by providing a slot in the link. It was obvious and did not involve invention to place a slot in the front links of either Schliephacke Patent or the Austrialian Patent to produce such a chair as shown in the Fletcher Patent and/or the Schliephacke Patent.

77. The three patents in suit are directed to the same purpose and same objective. Each shows a multiple-position reclining chair in which the seat and back-rest unit pivots about two separate centers of rotation, in which the seat and back-rest unit moves from an upright sitting position to an intermediate sitting position where it is stopped, and then to a fully reclining position. These movements are intended to be coordinated with the leg-rest so that the leg-rest is intended to move upwardly to support the legs of the occupant. These patents show links (in one instance a pin and slot) for mounting the seat and back-rest unit. The links all operate in substantially the same manner in each of these patents. There is no mechanical difference in operation between the links shown in one patent as compared to the links shown in the other patents in suit. Each is the equivalent of the other. The pin and slot arrangement is the equivalent of the links.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the cause of action set out in the Complaint and Counterclaim which arise under the Patent Laws of the United States.

2. Utility is absent from devices which cannot be used to perform their specific functions, and patents for such

subjects are therefore void. This rule applies even to cases in which, by simply adding new elements to useless contrivances, highly useful inventions are produced.

■■ 3. The term "useful" as contained in the patent law, when applied to a machine, means that the machine will accomplish the purpose practically when applied in industry. It is to be given a practical and not a speculative meaning. It means that the machine will work and accomplish the purposes set forth in the specification. Even if the machine can be made to accomplish the purposes specified, it is not useful within the meaning of the patent law, if from its inherent nature it will accomplish the purpose only to such a restricted extent as to make its use in industry prohibitive.

4. The Lorenz Patent fails to disclose a useful machine within the meaning of 35 U.S.C. § 101 and is therefore invalid and void.

5. Specification and drawings of the Lorenz Patent fail to comply with 35 U.S.C. § 112 in that such specification and drawings do not contain a written description of the invention and the manner and process of making and using it in such full, clear and concise and exact terms as to enable any person skilled in the art to which it pertains to make and use the same; therefore, the Lorenz Patent is invalid as it is based upon an inadequate disclosure.

6. Lorenz Patent No. 2,918,113 and each of the claims thereof is invalid and void as non-inventive over the art known as of the date of the alleged Lorenz invention, and void as not involving invention over Lorenz Patent No. 2,173,283 issued September 9, 1939, and Lorenz et al Patent No. 2,276,053 issued March 10, 1942.

■ 7. Applicant in a continuation-in-part application is not entitled to the benefit of the filing date of an earlier patent application if the disclosure in the earlier application is inoperative. Since the only disclosure in Application Serial No. 309,272, resulting in Patent

No. 2,746,521 in common with the Lorenz Patent is inoperative, Defendant cannot rely upon the filing date of September 12, 1952 for said Application Serial No. 309,272; Defendant is, therefore, restricted to the filing date of June 11, 1958, and said date is the invention date of the subject matter described in the Lorenz Patent.

8. A patent is invalid if the invention was described in a patent granted on an application for a patent by another filed in the United States before the invention by the applicant for patent, 35 U.S.C. § 102(e).

9. Claims 1, 2, 5, 10, 11, 14 and 16 of Fletcher Patent are invalid because the construction defined in those claims was described in the Lorenz Patent granted on an application filed by Lorenz in the United States before the invention of Fletcher.

■ 10. It is essential to the validity of a patent that it shall be granted on the application of the first inventor, whether the patent is issued to him or to his assignee. A patent applied for by one who is not the inventor is unauthorized by law and void, whether taken out in the name of the applicant or of any assignee of his; it confers no right as against the public.

11. Claims 1, 2, 5, 10, 11, 14 and 16 of the Fletcher Patent are invalid under 35 U.S.C. § 102(e) because the invention defined in the claims of the Fletcher patent was described in Patent No. 2,918,113 granted on an application filed by Lorenz in the United States before the invention by Fletcher, and are invalid under 35 U.S.C. § 102(a) because the invention was known by Lorenz in this country before the invention by Fletcher, and are invalid under 35 U.S.C. § 102 (f) because Fletcher himself did not invent the subject matter sought to be patented, and are invalid under 35 U.S.C. § 102(g) because before Fletcher's invention thereof the invention was made in this country by Lorenz who had not abandoned, suppressed or concealed it.

12. Assignment of the Fletcher Patent to Lorenz cannot cure the defect in the patent, based upon an application which failed to comply with 35 U.S.C. § 102.

13. Curtis Patent No. 2,798,534 contains the same elements and functions as does Fletcher Patent No. 2,940,509.

14. Claims 1, 2, 5 10, 11, 14 and 16 of Fletcher Patent No. 2,940,509 are invalid under 35 U.S.C. § 102(b) because the alleged invention defined in said claims of Fletcher Patent No. 2,940,509 was patented or described in Curtis Patent No. 2,798,534 issued in the United States more than one year prior to the application of Fletcher for Patent No. 2,940,509.

15. Claims 1, 2, 5, 10, 11, 14 and 16 of Fletcher Patent No. 2,940,509 are invalid under 35 U.S.C. § 103 because the differences between the subject matter defined in the claims of the Fletcher patent and the prior art as represented by Curtis Patent No. 2,798,534 are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.

16. The Fletcher Patent embodiments, Figs. 1 to 6 inclusive, do not operate as disclosed in the patent and are incapable of providing a reclining chair as disclosed and claimed. The Fletcher Patent Figs. 7 and 8 embodiment discloses a chair which is impractical for commercial production.

17. Claims of the Schliephacke Patent are invalid under 35 U.S.C. § 102(e) because the construction disclosed in the Schliephacke Patent was described in the Lorenz Patent granted on an application filed by Lorenz in the United States before the invention by Schliephacke; are invalid under 35 U.S.C. § 102(a) because the invention was known to Lorenz in this country before the invention by Schliephacke; are invalid under 35 U.S.C. § 102(f) because Schliephacke himself did not invent the subject sought to be patented, and are invalid under 35 U.S.C. § 102(g) because before Schlie-phacke's invention thereof the invention was made in this country by Lorenz who had not abandoned, suppressed or concealed it.

18. Assignment of the Schliephacke Patent to Lorenz cannot cure the defect in the patent, based upon an application which failed to comply with 35 U.S.C. § 102.

19. Claims of the Schliephacke Patent are invalid under 35 U.S.C. § 103 because such differences as exist between the subject matter sought to be patented and the chair disclosed in Figs. 12, 13 and 14 of the Lorenz Patent would have been obvious to a person having ordinary skill in the art at the time the alleged invention was made by Schliephacke.

20. Filing of the application for the Fletcher Patent on July 10, 1958, established invention by Fletcher as of July 10, 1958, of the subject matter disclosed in Patent No. 2,940,509.

21. Claims of the Schliephacke Patent are invalid under 35 U.S.C. § 102(e) because the invention of the Schliephacke patent was described in the Fletcher Patent granted on an application filed by Fletcher in the United States before the invention by Schliephacke; are invalid under 35 U.S.C. § 102(e) because the invention of the Schliephacke Patent was described in the Fletcher Patent granted on an application filed by Fletcher in the United States before the invention by Schliephacke; are invalid under 35 U.S.C. § 102(a) because the invention was known by Fletcher in this country before the invention by Schliephacke; are invalid under 35 U.S.C. § 102(f) because Schliephacke himself did not invent the subject matter sought to be patented, and are invalid under 35 U.S.C. § 102(g) because before Schliephacke's invention thereof the invention was made in this country by Fletcher who had not abandoned, suppressed or concealed it.

22. The embodiment of the Schliephacke patent does not operate as described in the patent and is incapable of providing a reclining chair as disclosed and claimed in the Schliephacke patent.

23. The Lorenz Patent, the Fletcher Patent and the Schliephacke Patent and each of the claims thereof are invalid and void, as providing a slot for a lost motion action would have been obvious and does not involve invention.

 24. The presumption of validity of a patent, as provided in 35 U.S.C. § 282, is greatly weakened where the Patent Office failed to consider pertinent art.

25. Since the three patents in suit are in a crowded field of reclining chairs, the patents must be strictly construed with a very narrow range of equivalents.

26. The mere fact that the same end result is accomplished is not sufficient to be the basis of a finding of infringement. There is no real identity of means, operation and results between any of the three structures charged to infringe and any of the three patents in suit.

27. Defendant has not infringed Claims 1, 2, 5, 6, 10, 12, 13, 14, and 15 of the Lorenz Patent; Claims 1, 2, 5, 10, 11, 14 and 16 of the Fletcher Patent and Claims 1, 2, 6, 7, 8, 9 and 10 of the Schliephacke Patent by its manufacture and sale of reclining chairs.

28. Defendant is entitled to a judgment dismissing the Complaint and awarding costs to Defendant.

29. Defendant is entitled to a declaratory judgment on its Counterclaim that the Lorenz Patent, the Fletcher Patent and the Schliephacke Patent are invalid and void.

30. Defendant is entitled to a declaratory judgment on its Counterclaim that Claims 1, 2, 5, 6, 10, 12, 13, 14 and 15 of the Lorenz Patent; Claims 1, 2, 5, 10, 11, 14 and 16 of the Fletcher Patent and Claims 1, 2, 6, 7, 8, 9 and 10 of the Schliephacke Patent are invalid and void and have not been infringed by Defendant's 87 T V chair, the Du-All chair, and the 400 chair.

31. Defendant is entitled to a declaratory judgment on its Counterclaim that the Lorenz Patent, the Fletcher Patent, and the Schliephacke Patent have not been infringed by any reclining chairs manufactured and sold by Defendant.

### JUDGMENT

Let judgment issue for defendant upon its Counterclaim as prayed therein. Plaintiff's complaint is dismissed at plaintiff's costs.