**E. I. duPONT de NEMOURS & CO.,**
**Plaintiff,**

v.

**UNION CARBIDE CORP., Defendant.**
**No. 65 C 651.**

United States District Court
N. D. Illinois, E. D.
Feb. 11, 1966.

Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill., for plaintiff.

Pendleton, Neuman, Seibold & Williams, Chicago, Ill., for defendant.

MAROVITZ, District Judge.

Motion of Defenaant for Summary Judgment as to Traver Patent.

This is a three-part patent infringement suit filed by plaintiff duPont, pursuant to Sections 271, 281, Title 35, U.S.C., for injunctive relief arising out of the alleged infringement by defendant of:

1) U.S. Letters Patent No. 2,632,921, a Method For Improving The Bonding Properties Of Polyethylene Plastics (Kreidl patent);

2) U.S. Letters Patent No. 2,648,097, a Method Of Securing Decorative Matter To A Surface Of A Polyethylene Body (Kritchever patent); and

3) U. S. Letters Patent No. 3,018,189, a Method Of Conditioning Polyethylene Surfaces For The Adhesion Of Materials Coated Thereon And Resulting Product (Traver patent),

all of which are now owned by plaintiff.

Defendant has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure with regard to the Traver Patent (No. 3 above), asserting that said patent is invalid, the purported invention having been in public use and on sale in this country more than one year prior to the date on which a covering patent was applied for in the United States. See Section 102(b), Title 35, U.S.C. In support of its motion, defendant initially directs the Court's attention to prior litigation between these parties, under Section 146, Title 35, U.S.C., in the Southern District of Illinois, Union Carbide Corporation v. Traver Investments, Inc. and E. I. duPont de Nemours & Co., 238 F.Supp. 540, wherein it is asserted Judge Mercer, while ruling on priority of invention, held: (1) that Traver's first application for a patent in 1950 did not disclose a successful process, the method described therein being unworkable; (2) that Traver's invention, the corona discharge process of treating polyethylene, was discovered as early as 1949 and was in commercial use in March of 1950; and (3) that the earliest valid patent application disclosing the Traver invention in a workable manner was filed in 1952, more than a year after the 1950 commercial public use thereof.

Defendant therefore contends that by virtue of Judge Mercer's findings in the prior suit between the parties, plaintiff is collaterally estopped from relitigating the same matters herein; and that said litigation having led to judicial determination of all genuine factual issues which would arise before this Court, defendant is entitled to summary judgment as to the Traver patent as a matter of law.

We must agree. While plaintiff sustained its burden before the Patent Office and Judge Mercer by proving that Traver was the prior inventor, it was forced to rely on evidence that the invention was reduced to practice and commercially manufactured by March 4, 1950. (See Decision of the Board of Patent Interferences, Defendant's Ex. D.) Indeed, plaintiff's own Answer and opening statement in the Peoria (Southern District) case (Defendant's Exhibits G, H) clearly admit such prior sale:

"* * * because Traver commenced, on March 4, 1950, more than

one year prior to the filing of the cross-complainant's (Union Carbide) aforesaid U. S. Patent Application * * * to sell and thereafter continuously sold to customers printed polyethylene bags emboding material treated in accordance with the process defined in the Counts in the interference * * *." (Excerpt from defendant's Answer in Southern District litigation, Ex. G, p. 4.)

Judge Mercer was convinced by these arguments and clearly held that the corona discharge method of treatment, at issue here, was reduced to practice in the latter part of 1949 (238 F.Supp. 540, 545), and that Traver began commercial production in 1950, delivering orders of printed bags in that year (238 F.Supp. 540, 544). Thus, when the Court subsequently found that Traver was not entitled to the benefit of his 1950 filing date for his invention, duPont's fate herein was sealed. Judge Mercer's ruling on this second issue was unequivocal, as well, holding, in support of the Board of Patent Interferences, that although Traver had completed his invention in 1949, his 1950 application did not disclose the corona discharge method but, rather, described an unworkable process and was, therefore, invalid:

> "It is incontestable upon the evidence adduced that successful treatment of polyethylene in air is achieved only by conditions creative of corona discharge. Traver's 1950 application did not disclose the corona principle. Thus, I see no error in the Court's conclusory finding that the 1950 application described an unworkable process." (See Defendant's Ex. M.)

With this as a background, we need only establish the applicability of collateral estoppel, and apply Judge Mercer's findings to the provisions of Section 102(b) to sustain defendant's motion.

It is clear, to this Court's satisfaction, that the material facts underlying defendant's motion for summary judgment are facts which have been judicially determined, with finality, between these parties, in the Peoria litigation. In Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 681 (1876), a much cited case in this area, Mr. Justice Field of the United States Supreme Court clearly announced the doctrine of collateral estoppel, stating that a prior judgment between the same parties, on a different cause of action is an estoppel:

> " * * * as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined."

See also Lawlor v. National Screen Service, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955):

> "Under the doctrine of collateral estoppel * * * such a (prior) judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit."

As a subquestion, therefore, we must decide whether the material facts supporting defendant's motion herein were "actually litigated and determined" in the Peoria case by Judge Mercer. We hold that they were. It is clear, to begin, that the fact of commercial public use of the Traver invention in 1950 was vital to duPont's proof of priority on behalf of Traver in the earlier litigation. As discussed above, the public use question was put in issue by the pleadings, presented to the Court by duPont's counsel, and was made a principal basis for the decision in Traver's favor. It is also apparent that Traver relied on his 1950 application as an alternative ground to

support his claim for priority, and that Judge Mercer specifically found that said application described an unworkable process and did not adequately disclose the invention.

It appears that the ghosts of plaintiff's successes in Peoria have returned to haunt its house.

■ There must be an end as well as a beginning to litigation. Stoll v. Gottlieb, 305 U.S. 165, 172, 59 S.Ct. 134, 83 L.Ed. 104 (1938). The orderly administration of justice requires that the matters once put in issue and determined by a Court of competent jurisdiction shall not be retried between the same parties, Johnson Co. v. Wharton, 152 U.S. 252, 257, 14 S.Ct. 608, 38 L.Ed. 429 (1894). This Court has no desire to, and cannot set itself up as an appellate tribunal to review Judge Mercer's decision, Singer v. A. Hollander & Son, (3rd Cir., 1953) 202 F.2d 55. We must therefore hold that plaintiff is collaterally estopped from disputing the truth of those material facts determined by Judge Mercer.

■■ We must turn then to the controlling statutory section (Section 102 (b), Title 35, U.S.C.). A patent is void under that enactment whenever it appears that the patentee's invention was "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." This "statutory bar" is not discretionary, but, rather, constitutes an absolute rule designed to limit the commercial advantages of patent monopoly in the public interest. Abandonment of the invention in favor of the public is deemed conclusively established by operation of law and the issued patent must be declared void. Elizabeth v. Pavement Co., 97 U.S. 126, 134, 24 L.Ed. 1000 (1877). Indeed, a patented process is considered to be in public use when it is commercially exploited by a sale of the product manufactured thereunder alone.

Accepting Judge Mercer's findings, this Court must conclude that the invention at issue was in public use and on sale more than one year prior to the 1952 application for the Traver patent. While Traver filed his initial application on October 26, 1950 (Defendant's Ex. C), Judge Mercer found that the method disclosed therein was not the corona discharge treating process placed in commercial use and, moreover, was itself unworkable.

Thus, if plaintiff is to prevail, it must be on its theory that the 1952 application was a "continuation in part" of the 1950 effort and therefore is entitled to the benefits of the earlier filing date under Section 120, Title 35, U.S.C. This question was not specifically reached by Judge Mercer, as he was limited to interference issues under Section 146. However, we can, by reference to his announced findings, resolve this matter in favor of defendant, as well, without need for an evidentiary hearing.

Under Section 120, a patentee would be entitled to treat the 1952 application as if it were filed in 1950, only if the earlier document disclosed the invention "in the manner provided by the first paragraph of section 112." Indeed, prior to the enactment of Section 120 in 1952, a long line of case law held that while "continuation" applications were occasionally entitled to an earlier effective filing date, Godfrey v. Eames, 68 U.S. 317, 17 L.Ed. 684 (1863), the original application must contain sufficient disclosure to support the claims made therein. See Philip A. Hunt Co. v. Mallinckrodt Chemical Works, (2d Cir., 1949) 177 F.2d 583; Van Der Horst Corp. v. Chromium Corp. (D.C.N.Y., 1951) 98 F. Supp. 412, 429–430, aff'd., (2d Cir., 1952) 197 F.2d 791. With the enactment of the Patent Code of 1952, these decisions were codified in Section 120, which, as alluded to above, demanded that the prior application meet the requirements of Section 112 as to sufficiency of disclosure, and that the second application cover an invention disclosed in the original.

■ In the opinion of this Court, plaintiff must fail on both counts. Initially, it is clear that under Judge Mercer's decision, plaintiff failed to meet the

full disclosure requirements of Section 112, in that an "unworkable" process cannot be said to have been described "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains \* \* \* *to make and use the same.*" (emphasis added). See Beidler v. United States, 253 U.S. 447, 40 S.Ct. 564, 64 L.Ed. 1006 (1920); and Lorenz v. Berkline Corp., (D.C.Ill., 1963) 215 F.Supp. 869, wherein Chief Judge William Campbell of this District stated, in point:

"Applicant in a continuation-in-part application is not entitled to the benefit of the filing date of an earlier patent application if the disclosure in the earlier application is inoperative."

Thus, in the light of Judge Mercer's finding that the 1950 application discloses an unworkable process, we must conclude that the initial requirement of Section 120 has not been met.

Similarly, we are convinced that the second application does not disclose the same "invention" as that described in the 1950 document, placing it outside the "continuity" requirements of Section 120, which codified the existing case law: National Hairdressers Ass'n v. Philad Co., (D.C.Del., 1941) 41 F.Supp. 701, aff'd., (3rd Cir., 1942) 129 F.2d 1020; Hazeltine Research v. General Motors Corp., (6th Cir., 1948) 170 F.2d 6, 10.

It is clear from Judge Mercer's decision that the two applications are not continuous, and disclose different matter. For, surely an invention which has admittedly been used commercially, as plaintiff's, cannot be considered identical to that found by the Court to lack the critical "corona discharge process" and to be "unworkable." Thus, we hold as a matter of law that Traver's 1952 application was not a valid continuation-in-part of the 1950 document.

██ Plaintiff's response to the summary judgment motion, particularly the affidavits submitted with regard to the "workability" of the 1950 application, must be overridden by the collateral estoppel doctrine discussed above. As the Seventh Circuit Court of Appeals stated in Florasynth Laboratories v. Goldberg, (7th Cir., 1951) 191 F.2d 877 at 880:

"It is fundamental that material facts or questions judicially determined in one action by a judgment may not be tried in a subsequent action between the same parties or their privies, whether the second action is upon the same or a different cause of action as the earlier action. \* \* \* "

Plaintiff had its day in court. To demonstrate prior reduction to practice in the interference proceeding, duPont chose to reveal a 1950 commercial use. Then, to plaintiff's dismay, the 1950 disclosure was found to be unworkable. The pleadings and proofs posed these issues for Judge Mercer in the Southern District of Illinois, and he decided them. Plaintiff, having won a "hollow" victory, petitioned the Court there for modification, pursuant to Rule 59, with regard to the finding of "unworkability," and was free to appeal the decree denying that motion. See Walker v. Bank of America, (9th Cir., 1959) 268 F.2d 16, 25. Having failed to do so, plaintiff cannot now ask this Court to assume the role of a reviewing tribunal.

We therefore conclude (1) that plaintiff is precluded under the doctrine of collateral estoppel from raising again the issues decided by Judge Mercer in the Southern District of Illinois litigation between these parties; (2) that the decision rendered by Judge Mercer resolves all genuine factual issues with regard to the enforceability of the Traver patent; and (3) that defendant is entitled to summary judgment on Paragraphs 8 and 9 of the Complaint, inasmuch as the Traver patent sued on therein is invalid as a matter of law, pursuant to the public use provisions of Section 102(b), Title 35 U.S.C.